Eileen DUNN, Plaintiff, Appellee,

v.

SECRETARY OF the UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant, Appellant.

No. 90–1544.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1990.

Decided Dec. 19, 1990.

Bruce G. Forrest, with whom John B. Koch, Stuart M. Gerson, Washington, D.C., Asst. Atty. Gen., Richard S. Cohen, Portland, Me., U.S. Atty., William Kanter, and Ira C. Lupu, Washington, D.C., were on brief, for defendant, appellant.

Judson Esty–Kendall, with whom Pine Tree Legal Assistance, Inc. was on brief, for plaintiff, appellee.

Before TORRUELLA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

CYR, Circuit Judge.

The present appeal originates from a pair of administrative errors by the Maine Department of Human Services (MDHS) in issuing food stamps to the household of

appellee Eileen Dunn. MDHS first erred in December 1987 by overissuing eighty-nine dollars worth of food stamps to the Dunn household. MDHS erred again by underissuing ten dollars worth of food stamps to the household in each of the next two months. Pursuant to state regulations for the implementation of United States Department of Agriculture regulations, MDHS thereafter set off the twenty dollar underissuance against the earlier eighty-nine dollar overissuance, reducing the balance due by the Dunn household to sixty-nine dollars.

Dunn thereupon brought an action in the United States District Court for the District of Maine against the Commissioner of MDHS for failure to comply with federal law regarding the restoration of her food stamp allotment, and against the Secretary of the U.S. Department of Agriculture ("Secretary"), alleging that the Secretary's set-off regulations, as applied by the Commissioner, are inconsistent with federal statutory requirements for the collection of claims arising under the Food Stamp Act. The district court, relying on the "plain meaning" of the statute, entered summary judgment for Dunn and against the Secretary. The Secretary appealed, presenting an appellate issue of first impression. We reverse.

## I

The Food Stamp Program is a federally funded, state administered program aimed at supplementing the nutritional needs of low-income persons. *See* 7 U.S.C. § 2011. The United States Department of Agriculture is charged with responsibility for the administration of the Food Stamp Program. Congress has authorized the Secretary of Agriculture to issue regulations, consistent

with the Act, as the Secretary deems appropriate. *See* 7 U.S.C. § 2013(c). States opting to participate in the Food Stamp Program are required to abide by the Act and the regulations promulgated by the Secretary, but the States are responsible for day-to-day operations. *See* 7 C.F.R. § 272.2.

MDHS, relying on 7 C.F.R. §§ 273.-18(c)(1)(iii) and 273.17(d)(4),[1] set off its erroneous twenty-dollar food stamp underissuance against its erroneous eighty-nine dollar overissuance and informed Dunn that she owed sixty-nine dollars. The case was decided on cross-motions for summary judgment. The only issue on appeal is the legal one whether the Secretary's set-off regulations implement permissible agency interpretations of the Food Stamp Act.

We apply the *de novo* standard of review. *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 167 (1st Cir.1989). Our review proceeds under the two step process annunciated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See, e.g., Massachusetts v. Lyng*, 893 F.2d 424, 428 (1st Cir.1990). First, we ascertain "whether Congress has directly spoken to the *precise question at issue*. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (emphasis added).

Congressional intent is learned primarily in an investigation for the "plain meaning of the statute," which is ascertained by looking "to the particular statutory language at issue, *as well as the language*

---

**1.** These regulations read:
> If a claim against a household is unpaid or held in suspense as provided in § 273.18, the amount to be restored shall be offset against the amount due on the claim before the balance, if any, is restored to the household. At the point in time when the household is certified and receives an initial allotment, the initial allotment shall not be reduced to offset claims, even if the initial allotment is paid retroactively.

> 7 C.F.R. § 273.17(d)(4).
> After calculating the amount of the inadvertent household or administrative error claim, the State agency shall offset the amount of the claim against any amounts which have not yet been restored to the household in accordance with § 273.17. The State agency shall then initiate collection action for the remaining balance, if any.

> 7 C.F.R. § 273.18(c)(1)(iii).

*and design of the statute as a whole." K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988) (emphasis added).[2] However, where "the statute is silent or ambiguous with respect to the specific issue," the court must defer to the agency's "permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. A permissible construction is simply one which is "rational and consistent with the statute." *NLRB v. United Food & Commercial Workers Union, Local 23,* 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987); *see also Sullivan v. Everhart,* —— U.S. ——, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990).

## II

■ The first inquiry we pursue is "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. Section 2020(e)(11) of the Food Stamp Act provides in relevant part:

> The State plan of operation ... shall provide ... upon receipt of a request from a household, for the prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongfully denied or terminated ...

The district court concluded that section 2020(e)(11), "[o]n its face, ... requires the state agency to promptly restore, in the form of coupons, wrongfully denied or terminated food stamp coupons." *Dunn v. Secretary of U.S. Dept. of Agriculture,* 735 F.Supp. 20, 23 (D.Me.1990). The court struck down the challenged regulations as inconsistent with the statute. Upon further examination, we conclude that section 2020(e)(11), informed by its context, admits of another interpretation consonant with its own language, the regulations, and the Food Stamp Act as a whole.

The district court ascertained the "plain meaning" of the language of section 2020(e)(11), in isolation, unaided by adequate examination of related statutory language or the overall design of the Food Stamp Act. As the Supreme Court cautioned long ago, "[t]o take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly [does] not contribute greatly to the discovery of the purpose of the draftsmen of a statute...." *United States v. American Trucking Assoc.,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). Rather, courts are required to look not only at the particular statutory language but at "the language and design of the statute as a whole." *K Mart Corp.,* 486 U.S. at 291, 108 S.Ct. at 1817.

The Secretary contends that the intendment of section 2020(e)(11) is not that any underissuance must be restored to the household in food stamp coupons but only that, *when restoration is required,* it must be accomplished with food stamp coupons, not cash. Since an underissuance need not be restored to a household which has re-

---

**2.** It is not entirely clear to what extent other tools of statutory construction, such as relevant legislative history, are appropriate for use in determining legislative intent in challenges to agency regulations. Supreme Court and First Circuit dicta imply that it is appropriate to use all the "traditional tools of statutory construction." *See, e.g., INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987); *Massachusetts v. HHS,* 899 F.2d 53, 58 (1st Cir.1990); *Lyng,* 893 F.2d at 429. *But cf., Cardoza–Fonseca,* 480 U.S. at 454, 107 S.Ct. at 1224 (Scalia, J., concurring in judgment) ("this approach would make deference [to agency interpretations] a doctrine of desperation ... [and] is not an interpretation but an evisceration of *Chevron* "); *NLRB v. United Food & Commercial Workers Union, Local 23,* 484 U.S. 112, 133–134, 108 S.Ct. 413, 426–427, 98 L.Ed.2d 429 (1987) (Scalia, J., concurring) (*Chevron* still the proper test despite "dicta" in *Cardoza–Fonseca* ). Recent Supreme Court decisions have not settled the debate. *Compare Adams Fruit Co. v. Barrett,* —— U.S. ——, 110 S.Ct. 1384, 1387, 108 L.Ed.2d 585 (1990) (issue turns on "the language of the statute and, where the language is not dispositive, on the intent of Congress as revealed in the history and purposes of the statutory scheme"), *with K Mart Corp.,* 486 U.S. at 292, 108 S.Ct. at 1817 ("If the agency regulation is not in conflict with the plain language of the statute, a reviewing court must give deference to the agency's interpretation of the statute."). We merely note, rather than resolve, the issue here as the parties agree that the legislative history of the Food Stamp Act reveals no "clearly expressed intent of Congress" on the meaning of 7 U.S.C. § 2020(e)(11).

ceived an unreimbursed overissuance, the set-off regulations do not contravene congressional intent. Several considerations commend the Secretary's interpretation.

First, section 2020(e)(11) does not explicitly address agency set-offs, even though the challenged set-off regulation was in place prior to the enactment of section 2020(e)(11).[3] Had Congress intended to change the agency's preexisting set-off policy, it seems reasonable to expect that it would have expressed its intention in precise terms. Second, as the Secretary notes, section 2020(e)(11) was enacted to implement a significant shift in Food Stamp Program policy, from a cash-for-coupons system to a coupons-only system.[4] Hence, the intendment of section 2020(e)(11) was not to affect the Secretary's preexisting set-off policy but to assure that whenever restorations of wrongfully denied or terminated allotments are required, food stamp coupons, rather than cash, must be the means used. Third, another signal that the challenged set-off regulations are not incompatible with the congressional intent of the Food Stamp Act emanates from the fact that Congress has never sought to have the challenged regulations amended or deleted since their promulgation in 1976. Especially where, as in the instant case, "Congress has re-enacted the statute without pertinent change, ... congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134

(1974).[5] Fourth, there are two other Food Stamp Act provisions which appear to confer on the Secretary the power to set off erroneous overissuances against erroneous underissuances. Section 2022(a)(1) empowers the Secretary to "settle and adjust any claim" arising under the Food Stamp Act and thus appears to clothe the Secretary with the common-law right of set-off.[6] Section 2022(b)(2)(B) in turn allows state agencies to "collect any claim against a household arising from the overissuance of coupons ... by using other means of collection [*i.e.*, other than reduction of future allotments]."

Dunn asserts that these "more general" provisions are restricted by the "more specific" language of section 2020(e)(11).[7] Under the Secretary's interpretation, however, section 2020(e)(11) in no manner constrains these statutory grants of administrative authority, *as there is no conflict among them.* We conclude, therefore, that "as written [section 2020(e)(11) ] at least bears (if it does not indeed favor) the interpretation" of the Secretary, *Everhart,* 110 S.Ct. at 965, which appears in any event to comport better with the "design of the statute as a whole," *K Mart Corp.*, 486 U.S. at 291, 108 S.Ct. at 1817.

Thus, even though the language of section 2020(e)(11), in isolation, may bear the interpretation given it by the district court, the Secretary's interpretation must be upheld since it is no less plausible. Appellee cannot prevail unless she can show that section 2020(e)(11) "cannot bear the interpretation adopted by the Secretary." *Ev-*

---

**3.** *See infra* note 5.

**4.** *See H.Rep. No. 95–464, 95th Cong., 1st Sess.* 238–244, 432–433, 470–471, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1978, 2183–88, 2361–62, 2401–02 (elimination of all cash transactions is considered essential to improving Food Stamp Program).

**5.** The set-off regulations were first proposed in 1974 and promulgated in 1976. *See* 41 Fed.Reg. 11465 (1976). The Food Stamp Act of 1977, Pub.L. 95–113, § 1301, 91 Stat. 958, fully replaced the original Food Stamp Act of 1964, Pub.L. No. 88–525, § 2, 78 Stat. 703.

**6.** *See, e.g., United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1601, 91 L.Ed. 2022 (1947) ("government has the same right 'which

belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him' " (quoting *Gratiot v. United States,* 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841))); *see also Tatelbaum v. United States,* 10 Cl.Ct. 207, 210 (1986) (set-off right is inherent in the United States government and grounded on common law right of every creditor to set off debts).

**7.** Of course, Dunn's characterization of section 2020(e)(11), as containing the "more specific" language, assumes the correctness of the district court's interpretation, which is the matter at issue on appeal.

*erhart,* 110 S.Ct. at 966. As long as the plain meaning of section 2020(e)(11) does not foreclose the Secretary's interpretation, we must uphold an agency regulation which is "rational and consistent with the statute." *United Food & Commercial Workers,* 484 U.S. at 123, 108 S.Ct. at 421.

### III

■ As Congress has not spoken directly to the precise matter at issue, *see Chevron,* 467 U.S. at 842–843, 104 S.Ct. at 2781–2782, we ask whether the Secretary's interpretation is a permissible one, bearing in mind that the principle of deference to agency interpretations requires that the Secretary's "regulations [be] given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

We find the Secretary's set-off regulations rational and consistent with the Food Stamp Act. Setting off erroneous under-issuances against unreimbursed overissuances is an efficient and cost effective method for recovering amounts due by food stamp recipients. Thus, the challenged regulations conserve available agency resources for promoting the primary objective of the Food Stamp Program: raising the nutrition level of low-income households. *See Lyng,* 893 F.2d at 424. Second, the challenged regulations undermine none of the substantive policies of the Food Stamp Program. Since future food stamp allotments are not affected by the set-off regulations, no household is subjected to a reduction in the ongoing benefits to which it has been determined entitled. The agency may only set off *unintentional* underissuances against unreimbursed overissuances.[8] Nor do the set-off regulations significantly lessen financial incentives for States to make accurate eligibility and quantity determinations.[9] Federal reimbursements to the States, which are designed to reflect state agency administrative error rates, are not substantially affected and the States are left to absorb erroneous overissuances not subject to set-off. While we do not necessarily say that the Secretary's is "an inevitable interpretation of the statute," we do say that "it is assuredly a permissible one." *Everhart,* 110 S.Ct. at 966.

### IV

The Secretary is charged with responsibility for administering the Federal Food Stamp Program as a rational and integrated whole, which entails a regulatory framework within which are balanced various beneficiary interests and the competing costs of administering the program. The challenged set-off regulations represent the Secretary's judgment how best to integrate, into a rational Food Stamp Program, regulatory provisions governing agency claims for amounts owed by food stamp beneficiaries, as a result of erroneous overissuances, with regulatory provisions requiring restoration of erroneous underissuances to food stamp beneficiaries. As an embodiment of a permissible exercise of the broad regulatory responsibility entrusted to the Secretary under the Food Stamp Act, *see Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782, the set-off regulations are valid.

We vacate the district court judgment directing restoration of twenty dollars in food stamp coupons and invalidating 7 C.F.R. §§ 273.18(c)(1)(iii) and 273.17(d)(4), and related state agency rules. We remand to the district court with directions for the entry of judgment in favor of the

---

8. The Secretary concedes that States are not permitted to effect a reimbursement of an overissuance by means of an intentional reduction of the food stamp allotment to which the household has been found entitled. *See* S.Rep. No. 97–504, 97th Cong., 2d Sess. 65, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1641, 1703 ("Current law does not permit the collection by offset of benefits of nonfraud overissuances which result from agency-caused error."). Thus, the Secretary's regulations at 7 C.F.R. §§ 273.17(d)(4) and 273.18(c)(1)(iii) merely direct the State agency to set off erroneous, *as distinguished from intentional,* underissuances against unreimbursed overissuances.

9. An important ancillary aim of the Food Stamp Act is reflected in its provisions for adjusting federal reimbursements of state agency administrative expenses in response to agency administrative error rates in eligibility and benefit determinations. *See* 7 U.S.C. 2025(c), (d).

Secretary and dismissing the action, with prejudice.

VACATED and REMANDED. *No costs to either party.*