WE WHO CARE, INC., Paula Horton, and Kim Borrello–Manzo, Plaintiffs,

v.

Louis W. SULLIVAN, M.D., in his capacity as Secretary of the United States Department of Health and Human Services, and Commissioner, Maine Department of Human Services, Defendants.

Civ. No. 89–0172 P.

United States District Court,
D. Maine.

Jan. 25, 1991.

Jack Comart, Pine Tree Legal Assistance, Inc., Augusta, Me., for plaintiffs.

David Collins, Asst. U.S. Atty., Portland, Me., Joyce E. McCourt, U.S. Dept. of Health and Human Services, Boston, Mass., for Louis Sullivan.

Mariana E. Thibeau, Asst. Atty. Gen., Augusta, Me., for Com'r.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON A STIPULATED RECORD

GENE CARTER, Chief Judge.

Plaintiffs in this class action challenge a Department of Health and Human Services (HHS) regulation, codified at 45 C.F.R. § 233.20(a)(3)(i)(B)(2), promulgated pursuant to the Aid To Families with Dependent Children program (AFDC or Act). The regulation fixes a ceiling of $1,500 on the amount of equity in an automobile, owned by an AFDC applicant, that the applicant may exclude when determining eligibility for AFDC benefits. Plaintiffs claim that the regulation is arbitrary and capricious, was promulgated in violation of the Administrative Procedure Act, and violates federal law. The case is now before the Court on the respective parties' motions for judgment on a stipulated record.

The Court, for the reasons that follow, will grant Plaintiffs' Motion for Judgment on a Stipulated Record.

### Background and Facts

The AFDC program, codified at 42 U.S.C. § 601 *et seq*, is a cooperative state-federal program designed "to furnish financial assistance ... to needy dependent children and the parents or relatives with whom they are living...." 42 U.S.C. § 601. Participating states must administer the

program in conformity with the Act and rules and regulations promulgated by HHS.

The AFDC statute prescribes that families whose combined value of resources exceeds $1,000 (or such lower amount as participating states may determine) are ineligible for aid under the program. 42 U.S.C. § 602(a)(7)(B).[1] The same section provides that states, in determining resources, must exclude "so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe...." The $1,000 resource limitation and the accompanying automobile exclusion were enacted as part of the Omnibus Budget Reconciliation Act, Pub.L. No. 97–35, 2305, 2320(b)(1), 95 Stat. 844.

In an interim final regulation published on September 21, 1981, the Secretary established $1,500 as the upper limit of the automobile exclusion. *See* 46 Fed.Reg. 46750. The final regulation, promulgated on February 5, 1982, retained the $1,500 limit. *See* 47 Fed.Reg. 5648; 45 C.F.R. § 233.20(a)(3)(i)(B)(2).[2] In justifying the $1,500 figure, the Secretary explained:

> We chose $1,500 as the maximum equity value for an automobile on the basis of a Spring 1979 survey of food stamp recipients. Data from that survey suggest that 96 percent of all food stamp recipients who own cars had equity value in them of $1,500 or less. In that the Federal maximum limit should be set within the range of the vast majority of current recipients and given that the food stamp population tends to be, on the average, more affluent than AFDC recipients, this limit appears reasonable and supportable.

47 Fed.Reg. at 5657.

Plaintiffs are members of a class who have applied for or will apply for public assistance through the AFDC program and who have been or will be denied AFDC benefits because they own automobiles with an equity value in excess of $1,500.[3] Plaintiffs claim that the automobile equity regulation is arbitrary, capricious and is contrary to the AFDC statute.

The parties have submitted the case on a stipulated record, agreeing that

> the record shall consist of the following documents ... admitted to be true copies:
>
> . . . .
>
> 2. The complete administrative record pertaining to the September 21, 1981 and February 5, 1982 publication of interim and final regulation 45 C.F.R. § 233.20(a)(3)(i)(B)(2).

The parties have also stipulated that

> The complete administrative record as set forth in paragraph three of the Stipu-

---

1. The statute provides:

   [T]he State agency—

   (B) shall determine ineligible for aid any family the combined value of whose resources ... exceeds $1,000 or such lower amount as the State may determine, but not including as a resource for purposes of this subchapter (i) ... so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe....

   42 U.S.C. § 602(a)(7)(B).

2. The regulation states in pertinent part:

   The amount of real and personal property that can be reserved for each assistance unit shall not be in excess of one thousand dollars equity value (or such lesser amount as the State specifies in its State plan) excluding only:

   . . . .

   (2) One automobile, up to $1,500 of equity value or such lower limit as the State may specify in the State plan; (any excess equity value must be applied towards the general resource limit specified in the State plan);

   45 C.F.R. § 233.20(a)(3)(i)(B)(2).

3. On December 26, 1989, the Court, in the absence of an objection, granted Plaintiff's Renewed Motion for Class Certification pursuant to Local Rule 19(c). The class is defined as

   All individuals in the State of Maine who since January 1, 1989 both owned an automobile and who either:

   i. have applied for or will apply for and have been or will be denied AFDC benefits; or

   ii. were or will be terminated from AFDC benefits;

   solely because the equity value in their automobile exceeded $1,500 as set forth in 45 C.F.R. § 233.20(a)(3)(i)(B)(2) and Chapter II, Section B of the Maine Public Assistance Manual.

lated Record has been provided to Plaintiffs. The Federal Defendant is not aware of any other material which was part of the original administrative record and which has not been provided to Plaintiffs and made part of the stipulated record; paragraph 2.

The administrative record consists of twelve comments received by the HHS in response to the interim final regulation. The food stamp survey mentioned by the Secretary in the Federal Register is not part of the administrative record.

### Standard of Review

■ Before proceeding to the merits, the Court pauses to consider the proper standard of review. "Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, [judicial] review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious." *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1122 n. 5 (1st Cir.1986)

(quoting *Heckler v. Campbell*, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983)). *See also Sullivan v. Zebley*, —— U.S. ——, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990); *Schweiker v. Gray Panthers*, 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).[4]

■ Whether the automobile equity regulation is "arbitrary and capricious" is determined with reference to Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 704 *et seq.* The Court of Appeals for the First Circuit recently explained this standard of review as follows:

Under Section 10(e)(2)(A) of the APA, this Court must hold unlawful any agency action, findings and conclusions that we find to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). If we find instead that a rational basis exists to support the agency's decision, then we cannot disturb that decision. *Bowman Transportation, Inc.*

---

**4.** The Court notes that judicial review of an agency's construction of a statute which it administers is governed by the standards set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82. *See e.g. Dunn v. Secretary of Department of Agriculture*, 921 F.2d 365, 366 (1st Cir.1990). Under *Chevron*, the Court must first ask "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. If the Court finds a clear intent, the agency construction must be fully consistent with the statutory meaning. *Id.* Here, however, unlike the situation in *Dunn*, the challenged regulation was promulgated pursuant to an express delegation of legislative authority. In this circumstance, the first step in the *Chevron* analysis is largely irrelevant: if Congress had possessed a clear intent on the amount of the automobile equity exclusion, it would not have delegated to the Secretary authority to set the amount of the exclusion. In a recent challenge to a regulation which was promulgated pursuant to an express delegation of rule-making authority, the Supreme Court dispensed with the first prong of the *Chevron* analysis. *See Sullivan v. Zebley*, 110 S.Ct. at 890. (Justice White, writing in dissent, criticized the majority's deletion of the first prong of the *Chevron* analysis. *See* 110 S.Ct. at 897.) Despite the apparent futility of the exercise, the

Court has examined the statute, using traditional tools of statutory interpretation, and finds that Congress did not possess a clear intent on the question at issue.

*Chevron* also suggests that, in the absence of a clear congressional intent, the standard of judicial review of regulations promulgated pursuant to an express delegation of rule-making power differs from that of regulations promulgated pursuant to an implicit delegation of authority. Courts must defer to the former provided they are not "arbitrary, capricious or manifestly contrary to the statute," while the latter must be upheld if they are "reasonable interpretations" of the statute. *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–82. According greater deference to rules promulgated pursuant to an explicit delegation of rule-making authority than to rules promulgated pursuant to an implicit delegation of authority is intuitively supportable; whether there is any practical difference between the standards is doubtful. For example, our own Court of Appeals in *Dunn*, in reviewing a Department of Agriculture food stamp regulation, stated that a "permissible" agency construction of a statute is "simply one that is 'rational and consistent with the statute,'" *Dunn*, at 367; the Court later stated that the regulation had to be upheld unless it was "arbitrary, capricious or manifestly contrary to the statute." *Dunn*, at 368.

*v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974). It is well-established that this standard of review is highly deferential, whereby the reviewing court presumes the agency action to be valid. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Pacific States Box and Basket Co. v. White,* 296 U.S. 176, 185–86, 56 S.Ct. 159, 163–64, 80 [82] L.Ed. 138 (1935); *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34 (D.C.Cir.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

It is important to note that this Court cannot substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. at 823–24. Rather, we are required to affirm the agency's decision if it is supported by a rational basis. *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. at 290, 95 S.Ct. at 444. We cannot base our decision on what we would decide sitting in the place of the agency, but must determine whether the agency's decision can withstand the arbitrary and capricious challenge on review. We emphasize that though this standard of review is a deferential one, it does not mean that the appellate process is merely superfluous. As the reviewing court, we must be assured that the agency decision was based on relevant factors, and we must make "substantial inquiry" into the facts. *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d at 34–35 (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 415, 91 S.Ct. at 823).

*Conservation Law Foundation, Inc. v. Secretary of the Interior,* 864 F.2d 954, 957–58 (1st Cir.1989).[5]

### Discussion

■ Plaintiffs contend that the automobile equity regulation is arbitrary, capricious, and an abuse of discretion. Plaintiffs argue that while HHS purported to rely on a 1979 survey of food stamp households, that survey is not part of the administrative record and the Secretary did not have a rational basis for adopting the regulation.

The food stamp survey, on which HHS purportedly relied, was never a part of the administrative record[6] and is not before the Court, and the Court has no means of evaluating its methodology or content. The Court, therefore, cannot "make a substantial inquiry" into the factors relied on by HHS in formulating the regulation, and thus it has no basis for holding that the Secretary has provided a "reasoned basis" for its promulgation.

■ The Secretary argues that the Court may reasonably ascertain the agency's path because HHS not only cited the 1979 food stamp survey but also summarized its results. In some circumstances, a summary of the factors relied on by an agency might be enough to pass an "arbitrary and capricious" test. In this case, however, HHS did not provide even the most basic information concerning the food stamp survey, *e.g.*, who conducted the survey, how many households were interviewed, or the methodology used in conducting the survey. Moreover, the agency ambiguously asserted that the survey "suggested" that 96% of food stamp households owned cars with equity values less than $1,500. The Court is unable to conclude, on the present

---

5. *See also Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989); *Massachusetts v. Secretary of Health and Human Services,* 899 F.2d 53, 64 (1st Cir.1990) ("[The] scope of review [under the APA] is narrow. We must 'uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.'") (citations omitted).

6. In its memorandum in support of its Motion for Judgment on a Stipulated Record at page 4, the Secretary asserts that "an exhaustive search of the existing administrative record did not discover the cited 1979 food stamp survey, either in the Department of Health and Human Services, or in the Department of Agriculture...." The Secretary stipulated, however, that the record in this case consists of the entire administrative record; the alleged food stamp survey is not before the Court.

record, that the agency had a reasoned basis for choosing $1,500 as the equity limitation.

■ The Court recognizes that in enacting this type of regulation, lines must be drawn and that policy considerations play a substantial part in determining the agency's ultimate choice. But these facts do not absolve the agency from complying with the minimum requirements of the APA, namely, that the agency provide a reasoned basis for its action. The Court must engage in a searching inquiry—not into the agency's policy choices, but rather into the procedure employed by the agency to ensure that the choices made were not arbitrary and capricious.

■ Here, the Court is unable to perform its review function.[7] While the Court's review of the regulation is narrow, it must nevertheless undertake a "searching and careful" inquiry into the facts. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823. In this case, the facts upon which the Secretary relied simply are not before the Court. The Court is unable to determine whether there ever was a food stamp survey or whether the Secretary in fact rationally relied on such a survey, assuming one existed. To accept the Secretary's justification for the regulation, without being able to examine the data upon which he relied, would render judicial review meaningless. The Court, therefore, is constrained to set aside the regulation as arbitrary and capricious.[8]

### Relief

In addition to a declaration that the automobile equity regulation is invalid and an injunction against its enforcement, Plaintiffs seek an order directing the Commissioner to notify all class members "of their right to have their AFDC eligibility retroactively determined without the use of the $1,500 vehicle asset rule and, if found eligible, restored benefits shall be awarded." Plaintiffs' Memorandum of Law in Support of Judgment on a Stipulated Record at 29.

The state Defendant argues that any award of retroactive monetary relief is barred by the Eleventh Amendment to the United States Constitution. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The state Defendant also argues that notice relief of the type discussed in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), is not appropriate here. The Commissioner argues that such notice would result in significant administrative costs and that it would be of no value to members of the class in any event.

■ It is well settled that the Eleventh Amendment does not bar a federal court from granting prospective relief against a state defendant that is violating federal law. *Quern v. Jordan*, 440 U.S. at 337, 99 S.Ct. at 1148. It is likewise settled that a federal court may order notice relief that is ancillary to a valid award of prospective relief. *Id.* at 347, 99 S.Ct. at 1148. The Court, however, is satisfied that notice relief here would result in significant costs and administrative burden. The Court, therefore, finds it inappropriate to order notice relief in this case.

### ORDER

Accordingly, it is *ORDERED* that:

7. Where the record before a court makes judicial review of agency action impossible, the preferred course, except in rare cases, is to remand to the agency for additional investigation or explanation. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985). The Court concludes that, in this case, remand would be improper. First, neither party has suggested or requested a remand; on the contrary, the parties have submitted the case for decision on a stipulated record. Moreover, in its memorandum in support of judgment on a stipulated record, Defendant has asserted that "an exhaustive search of the existing administrative record did not discover the cited 1979 Food Stamp Survey, either in the Department of Health and Human Services, or in the Department of Agriculture...." Secretary's Memorandum of Law in Support of Motion for Judgment on a Stipulated Record at 4. In the circumstances of this case, the Court concludes that remand would be futile and inappropriate.

8. Because the Court finds that the automobile equity regulation is arbitrary and capricious, it need not address Plaintiffs' other challenges to the regulation.

I. Plaintiffs' Motion for Judgment Upon a Stipulated Record be, and it is hereby, *GRANTED*.

II. Defendants' Motion for Judgment Upon a Stipulated Record be, and it is hereby, *DENIED*.

III. It is hereby *DECLARED* that the automobile equity regulation, promulgated at 45 C.F.R. § 233.20(a)(3)(i)(B)(2), and any Maine regulations promulgated solely to comply with 45 C.F.R. § 233.20(a)(3)(i)(B)(2), are *INVALID*.

IV. Plaintiffs' requests for injunctive relief are hereby *DENIED* without prejudice to reassertion in the event of noncompliance by Defendants with this Judgment and Order, the Court retaining jurisdiction over this matter for purposes of future enforcement.