83 F.3d 1095
 96 Cal. Daily Op. Serv. 3289, 96 Daily Journal
D.A.R. 5376,
96 Daily Journal D.A.R. 8164
Isabel LOPEZ, Plaintiff-Appellant,
v.
Michael ESPY, in his official capacity as United States
Secretary of Agriculture; Eloise Anderson, as
Director of the California State
Department of Social Services,
Defendants-Appellees.
 No. 94-15538.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 15, 1995.
Decided May 9, 1996.
As Amended on Denial of Rehearing July 3, 1996.
 
 Gary F. Smith, Legal Services of Northern California, Inc., Woodland, California, for plaintiff-appellant.
 Pamela A. Moreau, United States Department of Justice, Washington, DC, Thomas R. Yanger, Deputy Attorney General, Sacramento, California, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California; Lawrence K. Karlton, Chief District Judge, Presiding. D.C. No. CV-93-01245-LKK.
 Before D. W. NELSON and T. G. NELSON, Circuit Judges, and KING, District Judge.*
 D. W. NELSON, Circuit Judge:
 
 
 1
 Isabel Lopez, on behalf of herself and all others similarly situated, seeks to prohibit the Secretary of Agriculture and the Director of the California Department of Social Services from offsetting past erroneous underissuances and overissuances in food stamp allotments against one another when calculating the amount that the state agency must restore to the recipient. The district court denied her petition. Because this policy contradicts the plain language of the Food Stamp Act, 7 U.S.C. §§ 2011-2032, we reverse.
 
 BACKGROUND
 
 2
 The Food Stamp Program was enacted in 1964 to "alleviate hunger and malnutrition" among America's poor. 7 U.S.C. § 2011. The Program is administered nationally by the United States Secretary of Agriculture, who is responsible for issuing regulations consistent with the Act. 7 U.S.C. § 2013(a). States that participate in the Food Stamp Program designate a state agency that is responsible for administering the program on the state level. 7 U.S.C. § 2012(n). The state agency must administer the program in compliance with the Act and its implementing regulations. 7 U.S.C. §§ 2020(e)(5) and (6). While the federal government bears responsibility for the cost of food stamp benefits, 7 U.S.C. § 2013(a), the states share with the federal government the costs of administering the program. 7 U.S.C. § 2025.
 
 
 3
 The appellant, Isabel Lopez, challenges the offsetting policy of the Secretary of Agriculture that is set forth in regulations at 7 C.F.R. §§ 273.17(d)(4)[1] and 273.18(c)(1)(iii).[2] She also challenges the California regulations that adopt this policy, §§ 63-801.313[3] and 63-802.54[4] of the California Manual of Policies and Procedures. According to these regulations, when the agency discovers that it has erroneously underissued food stamps to the recipient, it checks its records to learn whether there are any outstanding claims against the household arising from erroneous overissuances of food stamps in other months. If there are, the agency restores to the recipient food stamps equal to the amount of the difference between the underissuance and overissuance rather than the full amount of the underissuance (e.g., if a recipient were overissued $30 worth of food stamps in one month and underissued $50 worth of food stamps in another month, she would receive $20 rather than $50 worth of food stamps from the agency when it learned of the error).[5] Lopez argues that this policy is in direct conflict with two subsequently adopted provisions of the Food Stamp Act, 7 U.S.C. § 2020(e)(11)[6] and § 2022(b)(2)(A).[7]
 
 
 4
 When the Food Stamp Act was originally adopted it did not include any provisions addressing means for correcting overissuances and underissuances of recipients' monthly allotments. Initially, the Secretary[8] maintained that the federal government was not required to reimburse retroactively recipients who were denied all or a portion of their monthly allotments, even when the underissuance was due to agency error, because "[p]ast food consumption cannot be increased or otherwise altered." Bermudez v. United States Dep't of Agric., 490 F.2d 718, 720 n. 2 (D.C.Cir.), cert. denied 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973)(citing Federal Nutrition Service, FNS Instruction 732-14 IV-D).
 
 
 5
 The D.C. Circuit rejected this argument in Bermudez, however, and held that the federal government was required to reimburse recipients retroactively for food stamp benefits that were wrongly denied. Id. at 723. See also Aiken v. Obledo, 480 F.Supp. 1314, 1318 (E.D.Cal.1979)(adopting the Bermudez holding). Subsequently, the Secretary proposed the offsetting policy at issue in this case whereby erroneous underissuances would be restored to recipients only to the extent that they exceeded erroneous overissuances. 39 Fed.Reg. 35178 (1974). Regulations adopting this policy were promulgated in 1976, 41 Fed.Reg. 11466 (1976), and repromulgated without change in 1978 following the congressional reenactment of the Food Stamp Act in 1977. 43 Fed.Reg. 47879 (1978).
 
 
 6
 In the 1977 reenactment of the Food Stamp Act, Congress added 7 U.S.C. § 2020(e)(11), a crucial provision in this case. That statute requires that the state shall provide for "prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongfully denied." 7 U.S.C. § 2020(e)(11). In 1981, Congress adopted the second provision that Lopez relies upon, 7 U.S.C. § 2022(b)(2)(A), which prohibits the agency from reducing a recipient's monthly food stamp allotment to recover overissuances of benefits caused by agency error.
 
 FACTS AND PRIOR PROCEEDINGS
 
 7
 The named plaintiff, Isabel Lopez, receives food stamp benefits on behalf of herself and her minor daughter. In November 1992, it was discovered that due to agency error Lopez had been underissued food stamp benefits in the amount of $268 for the month of July 1992 and overissued $77.00 in benefits for the month of August 1992. After offsetting the $77.00 overissuance against the $268.00 underissuance, the agency issued to her the difference between the two, amounting to $191.00 in food stamp benefits.
 
 
 8
 In an effort to obtain prompt restoration of the full $268.00 worth of food stamps that was underissued in July, Lopez pursued and exhausted her state administrative remedies. She then filed a class action complaint on behalf of herself and all other similarly situated food stamp recipients. Although the class was not certified because the district court granted the Secretary's motion to dismiss, the parties stipulated to a class definition, and the district court found that the requirements of Fed.R.Civ.P. 23 were met. The class definition is as follows:
 
 
 9
 All Food Stamp eligible households in California which are or have been subject to reduction or denial of Food Stamp benefits wrongfully withheld or terminated and which have not been restored, as authorized by 7 U.S.C. § 2020(e)(11), in the full amount underpaid, as a result of being offset or netted against an amount of Food Stamp benefits overpaid to the household because of State-agency caused error.
 
 
 10
 Thus, we consider the implications of our decision not only for Isabel Lopez but for the entire class of recipients who are subject to offsetting.
 
 
 11
 In her complaint, Lopez argued that the offsetting policy and regulations deprive recipients of their statutory rights in two ways: (1) by denying the prompt restoration of any allotment or portion thereof which has been wrongly denied or terminated, in violation of 7 U.S.C. § 2020(e)(11); and (2) by involuntarily reducing food stamp benefits to recover agency-caused overissuances, in violation of 7 U.S.C. § 2022(b)(2)(A). The district court rejected her argument and dismissed the case under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The court held that the two statutory provisions at issue were ambiguous with respect to the offsetting policy. It therefore deferred to what it concluded was a permissible construction of the Food Stamp Act on the part of the Secretary. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) Lopez then filed this appeal.
 
 STANDARD OF REVIEW
 
 12
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and as such is reviewed de novo. Everest and Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir.1994). When considering whether regulations promulgated by an agency comply with the statute, a reviewing court "must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 843, 104 S.Ct. at 2781. When the plain language of a statute is clear, it may be overcome only when "there is a clearly expressed legislative intention contrary to the language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). If the language of the statute is ambiguous, however, a reviewing court may declare a regulation invalid only if it is "manifestly contrary to the statute." Chevron, 467 U.S. at 844, 104 S.Ct. at 2782.
 
 ANALYSIS
 
 13
 The first question we must ask in this case is whether the plain language of the Food Stamp Act prohibits the type of offsetting embodied in the challenged regulations. If it does, the regulations are invalid unless we find that Congress clearly intended to allow such offsetting, notwithstanding the plain language of the statute. See INS v. Cardoza-Fonseca, 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12. The relevant provisions of the Food Stamp Act are 7 U.S.C. § 2022(b)(2) and 7 U.S.C. § 2020(e)(11). Although the former provision is ambiguous, we conclude that the latter provision is not.
 
 
 14
 Section 2022(b)(2)(A) allows the agency to collect overissuances from recipients by reducing their monthly allotment by the greater of 10% or $10 until the overissuance is recovered, unless the overissuance resulted from agency error. The offsetting provided for by this section applies where the overissuance was due to household error. Section 2022(b)(2)(B) provides that if the overissuance was the result of agency error, however, it may be recovered using "other means of collection." According to the legislative history, these other means include "collection agencies, court-ordered garnishments, or liens against household property." S.Rep. 97-504, 97th Cong., 2d Sess. 65, reprinted in 1982 U.S.C.C.A.N. 1641, 1734.
 
 
 15
 The Secretary argues that the offsetting of past erroneous overissuances and underissuances against one another in order to calculate reimbursement does not fall under the prohibition against offsetting in § 2022(b)(2)(A). Rather, she argues, it falls under § 2022(b)(2)(B), which allows recovery of overissuances by "other means." We agree that § 2022(b)(2)(A) appears to prohibit the use of intentional reductions in future monthly allotments to recover overissuances and does not contemplate past underissuances due to error. Thus, calculating reimbursement by netting past erroneous overissuances and underissuances might be considered "other means of collection" under § 2022(b)(2)(B). On the other hand, because the hardship to the recipient is the same, it is possible to interpret § 2022(b)(2)(A) as prohibiting the type of offsetting at issue in this case. Because § 2022(b)(2) lends itself to either interpretation, it is ambiguous.
 
 
 16
 Section 2020(e)(11) is not ambiguous. That provision requires that the agency must provide for "the prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongfully denied or terminated." This circuit has held in a case interpreting a provision of the Aid to Families with Dependent Children program (AFDC), 42 U.S.C. §§ 601-603, that
 
 
 17
 "the intent of Congress is clear.... Section 602(a)(22) requires state agencies to 'promptly take all necessary steps to correct any overpayment or underpayment of aid....' 'All' means every. 'Any' means without restriction or limitation. The plain meaning of the statute could not be broader. Congress intended all underpayments to be corrected."
 
 
 18
 Edwards v. McMahon, 834 F.2d 796, 799 (9th Cir.1987). Consistent with our construction of 42 U.S.C. § 602(a)(22) in Edwards, we conclude that § 2020(e)(11) clearly mandates that any underissuance be promptly restored. The plain language of this provision leaves no room for exceptions. As a result, the Secretary's interpretation of § 2022(b)(2)(B), according to which offsetting of past erroneous overissuances and underissuances against one another falls into the category of "other means" of recovery, must give way to the plain language of the statute.
 
 
 19
 The district court erred in finding that § 2020(e)(11) was ambiguous. The district court based its conclusion on congressional intent, finding that "[t]he legislative history establishes that the concern of Congress [in adopting § 2020(e)(11) ] was the medium of restoration (coupons rather than cash) and not its computation." The only authority the district court cited in support of this proposition, however, was Dunn v. Secretary of U.S. Dep't of Agriculture, 921 F.2d 365 (1st Cir.1990)(holding that the same offsetting policy that is at issue in this case did not violate the Food Stamp Act). However, in Dunn the court explicitly stated that it did not rely on congressional intent because "the parties agree[d] that the legislative history of the Food Stamp Act reveal[ed] no 'clearly expressed intent of Congress' on the meaning of 7 U.S.C. § 2020(e)(11)." Id. at 367 n. 2.
 
 
 20
 We also reject the position taken by the First Circuit in Dunn that although when viewed in isolation § 2020(e)(11) appears to prohibit offsetting of past erroneous overissuances and underissuances, when viewed in the context of the Act as a whole, the provision is ambiguous as to whether it permits such offsetting. Id. at 367. The First Circuit points to nothing in the Act that changes the plain meaning of § 2020(e)(11). Instead, it enumerates a series of factors that it finds indicate that "the set-off regulations do not contravene congressional intent." 921 F.2d at 368. In doing so, we submit that the First Circuit applied the wrong standard. The plain meaning of a statute may be overcome only when there is very strong evidence of a contrary congressional intent. INS v. Cardoza-Fonseca, 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12.
 
 
 21
 We hold that the Secretary has not met her burden of demonstrating that Congress clearly intended to allow the offsetting at issue in this case. If anything, there is a stronger case to be made that Congress intended that such offsetting would not be permitted under the statute.
 
 
 22
 First, Congress has created a scheme that strictly limits the reduction of current benefits by the agency in order to recover past overissuances. As the district court in this case explained, "[s]ection 2022(b) provides for the recovery of overpaid benefits by means which vary according to degree of recipient culpability, if any, in the overissuance." Where there is recipient fraud the agency may reduce ongoing monthly benefits to recover the overissuance. 7 U.S.C. § 2022(b)(1)(A). Where the overissuance is due to household error, the agency may only reduce monthly allotments by 10% or $10 to recover the overpaid amount. 7 U.S.C. § 2022(b)(2)(A). Where the recipient is totally blameless because the overissuance was caused by agency error, the agency is not ever permitted to recover the overpaid amount by reducing monthly allotments, id., but may use other means. 7 U.S.C. § 2022(b)(2)(B). This scheme reflects Congress' recognition that underissuance of a recipient's food stamp allotment creates hardship even if the recipient received an overissuance in some previous month.
 
 
 23
 It also appears unlikely that Congress intended to create a scheme that encourages errors on the part of the agency rather than discouraging them. See 7 U.S.C. 2025(c)(establishing a system of incentives to encourage the state agencies that administer the Food Stamp Program to reduce their errors); See also S.Rep. 97-504, 97th Cong., 2d Sess. 71, reprinted in 1982 U.S.C.C.A.N. 1641, 1709 (explaining that proposed amendments to the Food Stamp Act "would grant an increased ... Federal share of administrative costs to those States with error rates (including the rate of underissued benefits ) below 5 percent." (emphasis added)). The offsetting policy embodied in the challenged regulations reduces the agency's incentive to minimize error because it provides an easy way to recover its losses due to erroneous overissuances. We emphasize, however, that our holding does not rest on the assumption that the agency intentionally makes mistakes in order to recover erroneous overissuances.
 
 
 24
 The Secretary's argument that the offsetting regulations are consistent with congressional intent because they are economically efficient also lacks merit. First, while the Senate Report explaining § 2022(b) discussed the need to increase the rate of recovery for overissuances, it explicitly excluded erroneous overissuances from the discussion, stating that "[c]urrent law does not permit the collection by offset of benefits of nonfraud overissuances which result from agency-caused error." S.Rep. 97-504, 97th Cong.2d Sess. 65, reprinted in 1982 U.S.C.C.A.N. 1641, 1703.
 
 
 25
 Second, § 2020(h) ensures that the federal government will not bear the cost of overissuances resulting from the agency's negligence. This section provides that the state must reimburse the federal government for overissuances resulting from the state agency's negligence or fraud. 7 U.S.C. § 2020(h). Thus, even if Congress was motivated by budgetary concerns in adopting § 2020(b)(2), this does not support the argument that Congress intended to allow offsetting in cases involving overissuances and underissuances due to state agency error.
 
 
 26
 Finally, the economic efficiency argument ignores the fact that the Food Stamp Act is a remedial statute which is intended to improve the nutrition of the poor. 7 U.S.C. § 2011. Thus, in adopting § 2022(b) Congress sought to balance economic efficiency against its concern for recipients. This balancing of interests is evident from the fact that Congress did not allow state agencies intentionally to reduce a monthly allotment at all in cases of overissuance caused by agency error, even though this is the most economically efficient means of recovering the overissuance. 7 U.S.C. § 2022(b)(2)(A); See also West v. Bowen, 879 F.2d 1122, 1144 n. 13 (3d Cir.1989) (finding that "the clear overriding purpose of the [Food Stamp Act] ... is to provide benefits to those actually disabled, not to save money and make administration easier at the USDA by taking those benefits from the disabled").
 
 
 27
 The hardship that may arise from allowing state agencies to recover past overissuances by netting them against past underissuances due to agency error also suggests that this was not the intent of Congress. This hardship can be illustrated by the following hypothetical. Imagine that a recipient receives an overissuance of $100 in July. Several months later, say in October, the recipient receives an underissuance of $100. In light of the fact that monthly allotments are admittedly inadequate to meet the needs of the recipient, it is almost certain that the household will have already used up the overissuance from July. See H.R.Rep. No. 95-464, 95th Cong., 1st Sess. 246 (1977). Now the recipient asserts a claim against the agency for the underissuance of October. Rather than being reimbursed the $100, the recipient is told that all claims are subject to offset so that she receives nothing.
 
 
 28
 The Secretary asserts that the offsetting policy would never affect the current month's allotment. It is certainly true that the agency cannot intentionally reduce the current month's allotment upon learning of an erroneous overissuance in the past. However, if the agency has already erroneously underissued Food Stamps in October (to use the hypothetical above), according to the regulations, the claim for the past overissuance will be offset against the past underissuance even if the recipient seeks in the month of October to recover the amount that was underissued in that same month.[9]
 
 
 29
 However, even assuming that the agency would reimburse the recipient for the underissuances if she applied during the month in which the error was made, the policy causes hardship. This hardship arises because our hypothetical recipient must recognize that there has been an underissuance and apply for reimbursement in the month of October or she will lose it (because, as discussed above, once November arrives, the underissuance of $100 will be netted against the earlier $100 overissuance). Thus, the policy leaves the recipient a very short period of time to recover the underissuance, especially in light of the fact that § 2020(e)(11) normally gives recipients a year to recover underissuances. Because eligibility sometimes changes and allotments must be calculated for each month, it is possible that a recipient might not even realize she has received less than her monthly allotment until the next month. Alternatively, she might not notice the underissuance until she runs out of groceries at the end of the month, leaving her little or no time to apply for restoration of that month's full allotment.
 
 
 30
 While these results may not be enough to show that the policy embodied in the challenged regulations is "manifestly contrary" to the statute, as would be required if the statute were ambiguous, they also do not provide strong evidence that Congress did not mean what it said in § 2020(e)(11) when it required prompt restoration of "any" underissued allotment. In the absence of such clear intent on the part of Congress, we decline to read into § 2020(e)(11) an exception to its broad mandate to restore all underissued allotments. Therefore, we REVERSE. We deny the appellant's request for attorney's fees pursuant to 28 U.S.C. § 2412 because we find that the Secretary's position was substantially justified. We express no opinion regarding the appellant's potential fee claim pursuant to 42 U.S.C. § 1988.
 
 
 31
 T.G. NELSON, Circuit Judge, dissenting.
 
 
 32
 The decision in this case turns on whether or not an ambiguity exists in the statutory scheme. When the individual sections are read one at a time, no ambiguity exists. But if they are read together, the Congressional command is ambiguous.
 
 
 33
 Section 2020(e)(11) directs the "prompt restoration" of "any allotment" wrongfully withheld. Section 2022(b)(2)(A) orders the State agency to "collect any claim arising from an overissuance." Claims arising from household error may be collected from monthly allotments, while those arising from agency error may not be, but the agency may use "other means of collection" as to those claims, under Section 2022(b)(2)(B).
 
 
 34
 In the absence of Section 2022(b)(2), the offset employed here would clearly be improper. In the absence of Section 2020(e)(11), the offset would just as clearly be proper. Both statutes deal with over-issuances and the combination of the two creates an ambiguity in the power of state agencies to collect over-issuances. The majority's review of the two provisions independently of each other runs afoul of the basic rule of statutory construction that each section of a statute is to be "construed in connection with every other part or section so as to produce a harmonious whole." 2A Norman J. Singer, Sutherland Statutory Construction § 46.05 at 103 (5th ed. Clark Boardman Callaghan 1993) (Supp.1996). See also Smith v. United States, 508 U.S. 223, 233, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute.") If the existence of Section 2022(b)(2) is recognized, and an attempt is made to give it significance, the ambiguity is apparent. The Secretary's construction of the statute he administers is reasonable, and carries the day.
 
 
 35
 In my view, the district court had it right, and I respectfully dissent.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 [1]
 7 C.F.R. § 273.17(d)(4) provides in relevant part that:
 If a claim against a household is unpaid ... the amount to be restored shall be offset against the amount due on the claim before the balance, if any, is restored to the household.
 
 
 [2]
 7 C.F.R. § 273.18(c)(1)(iii) provides in relevant part:
 After calculating the amount of the inadvertent household or administrative error claim, the State agency shall offset the amount of the claim against any amounts which have not yet been restored to the household in accordance with § 273.17. The state agency shall then initiate collection action for the remaining balance, if any.
 
 
 [3]
 Section 63-801.313 provides:
 After calculating the amount of the ... administrative error claim, the CWD shall offset the amount of the claim against any amounts which have not yet been restored to the household as a restoration of lost benefits in accordance with Section 63-802.54. The CWD shall then initiate collection action for the remaining balance, if any.
 California Manual of Policies and Procedures, California Department of Social Services.
 
 
 [4]
 Section 63-802.54 provides in relevant part:
 If a claim against a household is unpaid, suspended or terminated as provided in Section 63-801.5, the amount to be restored shall be offset against the amount due on the claim before the balance, if any, is restored to the household.
 California Manual of Policies and Procedures, California Department of Social Services.
 
 
 [5]
 We note that we are not asked to decide whether the state agency, upon learning of an overissuance due to agency error, may then reduce the recipient's allotment by a corresponding amount in the current month. Both parties agree that the agency may not do this
 
 
 [6]
 Under 7 U.S.C. § 2020(e)(11), the state is to provide:
 upon receipt of a request from a household, for the prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongly denied or terminated, except that allotments shall not be restored for any period of time more than one year prior to the date the State agency receives a request for such restoration from a household or the State agency is notified or otherwise discovers that a loss to a household has occurred.
 
 
 [7]
 7 U.S.C. § 2022(b)(2)(A) provides:
 State agencies shall collect any claim against a household arising from the overissuance of coupons, other than claims the collection of which is provided for in paragraph (1) of this subsection and claims arising from an error of the State agency by reducing the monthly allotments of the household. These collections shall be limited to 10 per centum of the monthly allotment (or $10 per month, whenever that would result in the faster collection rate).
 
 
 [8]
 Because the Director of the California Department of Social services simply joined in the Secretary's defense of the offsetting policy, we refer for convenience to both appellees as "the Secretary."
 
 
 [9]
 There is nothing in the regulations that distinguishes between claims made for erroneous underissuances in the current month and claims involving underissuances of past months. See 7 C.F.R. §§ 273.17(d)(4) and 273.18(c)(1)(iii)